UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
WEST PALM BEACH DIVISION

CASE NO: 9:18-cv-80390-WPD

BENNY BARMAPOV,

  Plaintiff,

v.

GUY AMUIAL, *et. al.*,

  Defendants.

_____/

### DEFENDANTS JOHN OBEID, PALM BEACH AUTO WHOLESALE LLC, AND TERRY RAFIH'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND MEMORANDUM OF LAW

Defendants JOHN OBEID, PALM BEACH AUTO WHOLESALE LLC, TERRY RAFIH, by and through undersigned counsel, pursuant to *Fed. R. Civ. P. 12(b)(6) and 12(d)*, move to dismiss Counts VIII, XIV, XV, XVII, and XIX, of Plaintiff's Second Amended Complaint for failure to state a claim upon which relief can be granted.

### Introduction

Plaintiff, Benny Barmapov ("BARMAPOV" or "Plaintiff"), has filed a 92-page, 440-paragraph, 19-count Amended Complaint naming 15 Defendants (not including John Does 1-20). in an alleged scheme to defraud him in connection with his investment in, and operation of, an automobile dealership located in Lake Park, Florida. The Second Amended Complaint seeks to allege a vast scheme whereby certain of the Defendants, the Amuials (Guy, Yossi and Avrham) and Reuben Sastiel, ("North Palm Beach Defendants") caused BARMAPOV to enter into a

business relationship with them to acquire and operate a Mitsubishi car dealership.  What is clear from a review of the Second Amended Complaint is that Plaintiff apparently feels the North Palm Beach Defendants took advantage of him regarding their business relationship and subsequent running of the dealership.  Specifically, he feels that they duped him as to the specifics of what their business relationship would be, and further that they have been improperly running the dealership thereafter to his financial detriment.  He is mad he ever got in bed with his business "partners" (utilizing that term colloquially, not legally), and so, as a result of his bad decisions, he has lashed out and is suing everyone even tangentially involved with the purchase of the dealership, its financing, and its operations.  This includes the lawyer who handled the transaction, the company from which he received financing, and more to the point for this motion, the person, Rafih, (and his agent, Obeid) who sold him the dealership.

The Second Amended Complaint must be dismissed in this action because this pleading remains fatally defective for many of the same numerous flaws that existed in both Mr. Barmapov's original Complaint, as well as his Amended Complaint.  Those flaws resulted in the Dismissal of the Amended Complaint on December 12, 2018.  See, [DE 160].  These same flaws have already been pointed out in detail three times by the twenty-three Defendants named in the original Complaint and the Amended Complaint.  See, [DEs 83-92; 113-120; 123; 143-145; 154; and, 156-159].  The Court expressly pointed out those same flaws, in its Order Dismissing Amended Complaint.  The Court also expressly stated what was required of Mr. Barmapov for an amended pleading.  See, [DE 160, Part C].  Mr. Barmapov failed to meet those requirements.

These Defendants also show, pursuant to the requirements of *Rule 12(g), Fed.R.Civ.P.*, that Section I of the Second Amended Complaint must be stricken by the Court.  Section I runs

2

from paragraph 21 through 69 and is referred to by Mr. Barmapov as the Background of Principal Parties. This section should be stricken pursuant to *Rule 8(a)*, which required Mr. Barmapov to state his claim through a short and plain statement showing that he is entitled to the relief requested; Rule 8(d) which states that each allegation must be simple, concise, and direct; Rule 10(b), which states that claims must be stated in separate numbered paragraphs, each limited to a single set of circumstances; and, *Rule 12(f),* which provides the Court authority to strike redundant, immaterial, impertinent and scandalous matter.

Although a short introduction to the parties might be helpful and acceptable; Mr. Barmapov did this only in paragraphs 21 through 26. However, even those paragraphs are mostly self-serving allegations designed to encourage the Court to believe that Mr. Barmapov is a sophisticated successful businessman who should not be held to the letter of written agreements because he decided not to use a lawyer, or even read the agreements, before he made the million dollar investments at issue.

The other forty paragraphs of Section I are not material to the causes of action Mr. Barmapov seeks to assert. They consist of nothing more than Mr. Barmapov's negative characterization of the history of the Defendants before they even met him. Those paragraphs do not even show any interaction between Mr. Barmapov and any Defendant, not one. Nothing in Section I supports any claim in this action.

On the other hand, Mr. Barmapov's immaterial negative characterizations are impermissibly prejudicial; they are also impertinent, scandalous, and redundant. We believe that these allegations and this whole section was included only for the purpose of tainting the Court's impression of the Defendants. This is not a legitimate purpose.

**FACTUAL ALLEGATIONS**

The allegations against Obeid[1] and Rafih and these Defendants are quite simple.  Almost all of which boil down to Rafih and Obeid, acting as the sellers of the dealership in an arm's length transaction with the buyer, stating in some form or another that Barmapov's already chosen business associates were trustworthy; or alternatively, that Rafih and Obeid did not voluntarily insert themselves into financial relationships of which they had no part in an attempt to interfere with said relationships and persuade Plaintiff to cease doing business with Plaintiff's chosen associates.

The three specific instances of wrongdoing regarding the above are:

- Rafih is alleged to have represented, following the January meeting by which time Barmapov had already decided to go into business with the Amuials and had indeed already signed the Operating Agreement between them, that Amuials "*were trustworthy and would be good business partners*" ¶ 100 and 113[2].

- Rafih is alleged have represented "*that the deal was sound, but more importantly, Rafih vouched for the integrity of the Amuials.*" ¶ 149.

- Obeid is alleged to have said at a January 2017 meeting that the Amuials and Rueben "*were trustworthy and would treat Barmapov fairly*". ¶ 89.

Additionally, regarding future profits:

- Obeid is alleged, along with other Defendants, to have "convinced [Barmapov] *to drop the issue of refundability [of the down payment] by repeatedly reassuring*

---

[1] For simplicity's sake, the use of the term "Obeid" herein is intended to refer to Defendant John Obeid, individually, as well as Palm Beach Auto Wholesale ("PBAW"); the latter solely sued in Count XIX for Civil Conspiracy by virtue of its agent, Obeid).

[2] All citations utilizing the ¶ symbol followed by a number correspond to that numbered paragraph within the Second Amended Complaint.

4

COHEN NORRIS WOLMER RAY TELEPMAN & COHEN
712 U.S. Highway One, Suite 400, North Palm Beach, FL 33408• Telephone 561-844-3600 • Facsimile 561-842-4104

*him that the sum was insignificant when compared to the profits he should expect*

*receive from the business*". ¶ 157.[3]

The paragraph above describes the entirety of wrongdoing attributed to Rafih.  Although it is alleged that Rafih directed Obeid to become involved with the Amuials to increase the chance of getting the best sales price, ¶ 82, and that Obeid was representing Rafih's interests and serving as a go between the parties, ¶ 106, it is solely for purposes of Count XIV (Fraud against Obeid and Rafih) that is alleged that Obeid's representations were made while serving as Rafih's agent. ¶ 396[4].

As to Obeid, it is also alleged that he sold used cars through his own company in a manner that did not maximize the benefit to R&B, the company operated by Barmapov and the Amuials. ¶¶ 206 and 213.  Nowhere is it alleged that Obeid, through his own used car company, PBAW, was not entitled to every penny paid him. ¶¶ 206, 213, and 437.[5]  Additionally, these acts are alleged, solely for purposes of Count XIX (Civil Conspiracy to Commit Breach of Fiduciary Duty and Defraud).[6]

## ALLEGATIONS NOT INCLUDED IN COUNTS AGAINST RAFIH AND/OR OBEID

As reflected above, not all allegations referencing Rafih and Obeid are necessarily incorporated within the Counts brought against them.

None of the Counts in the Second Amended Complaint against these Defendants (or any

---

[3] Although this representation concerning expected profits is alleged to have been "false", it is not alleged that the statement was knowingly false when made, nor that Obeid was aware that the Amuials "*never to intended to operate the business legitimately or for Barmapov's profit*". ¶ 158.
[4] ¶ 396 is not re-alleged in any other Count directed against Rafih.
[5] Nor it is alleged the Obeid owed Barmapov or R&B any sort of fiduciary duty, or that Obeid engaged in any transaction without R&B's full knowledge and acquiesce. Rather, Obeid transacted arm's length business with R&B.
[6] ¶¶ 204, 206, and 213 are not re-alleged in any other Count directed against Obeid.

other defendant for that matter) incorporate Paragraphs 1 through 20. Therefore, each Count includes no statement of the grounds for this Court's jurisdiction, proper venue, or the identities of the parties. Barmapov has alleged no grounds for jurisdiction over the subject matter and no jurisdiction over any Defendant for any particular Count. *Rule 8(a)(1)*, *Federal Rules of Civil Procedure* states that for a pleader to state a claim for relief the pleading must contain a statement of the grounds for the Court's jurisdiction. Thus all Counts should accordingly be dismissed for these deficiencies, as well as the resultant failure to state a cause of action.

In addition, other than Count XIX (Civil Conspiracy to Commit Breach of Fiduciary Duty and Defraud) – which essentially reincorporates all paragraphs (sans ¶¶ 1 through 20) of the Second Amended Complaint against all Defendants in a shotgun pleading, none of the allegations concerning any of the: (1) post-closing operations of the dealership, (2) any post-closing act or statement by Obeid (or Rafih),  (3) moneys derived from R&B by Obeid, or (4) acts of Co-Defendant Thomas Dougherty, are incorporated into any other Count against these Defendants.

### $320,000 Payment

Additionally, although it was almost the sole focus of the claims against Rafih in the original and Amended Complaints in this action, the allegations concerning the non-refundability of the $320,000 payment, discussed in paragraphs ¶¶ 138 – 146, are not incorporated into any other Count brought against Rafih, other than Count XIX (Civil Conspiracy to Commit Breach of Fiduciary Duty and Defraud).

This omission appears to be intentional, consistent with the fact that, unlike the earlier iterations, the Second Amended Complaint fails to allege that Rafih had any knowledge of

COHEN NORRIS WOLMER RAY TELEPMAN & COHEN
712 U.S. Highway One, Suite 400, North Palm Beach, FL 33408• Telephone 561-844-3600 • Facsimile 561-842-4104

Plaintiff's supposed limited English skills, or that Rafih had any knowledge that Barmapov was relying on his business associates to read the document for him, or that they would somehow mislead him. ¶¶ 142-143. To the extent that it was still somehow Plaintiff's intent to impute wrongdoing to Rafih concerning the $320,000 payment, Rafih would ask to adopt his argument concerning same as set out in his Motion to Dismiss the Amended Complaint, as well as the Option Agreement attached thereto as Exhibit 1.[7]

## MEMORANDUM OF LAW

### A.   Legal Standards

A defendant may move to dismiss a plaintiff's complaint for "failure to state a claim upon which relief can be granted." *Fed. R. Civ. P. 12(b)(6)*. To state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief...." *Fed. R. Civ. P. 8(a)*. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007). In *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009), the Supreme Court explained as follows:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Twombly* at 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*., at 556, 127 S. Ct. 1955, 167 L. Ed. 2d 929. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement of relief.'" *Id*., at 557, 127 S. Ct. 1955,

---

[7] "A party cannot recover in fraud for alleged oral misrepresentations that are adequately covered or expressly contradicted in a later written contract." *Hillcrest Pac. Corp. v. Yamamura*, 727 So. 2d 1053, 1055 (Fla. 4th DCA 1999). See also *Englezios v. Batmasian*, 593 So. 2d 1077 (Fla. 4th DCA 1992); *Greenwald v. Food Fair Stores* Corp., 100 So. 2d 200 (Fla. 3rd DCA 1958).

7

COHEN NORRIS WOLMER RAY TELEPMAN & COHEN
712 U.S. Highway One, Suite 400, North Palm Beach, FL 33408• Telephone 561-844-3600 • Facsimile 561-842-4104

167 L. Ed. 2d 929 (brackets omitted).  *Id.*

Plaintiff's fraud-based claims must be pled with particularity. *Fed. R. Civ. P. 9(b)*; *Schoppler v. Smilovits*, 689 So. 2d 1189 (Fla. 4th DCA 1997). "Rule 9(b) is satisfied if the complaint sets forth (1) precisely what statements were made in what documents or oral representations or what omissions were made, and (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) same, and (3) the content of such statements and the manner in which they misled the plaintiff, and (4) what the defendants obtained as a consequence of the fraud." *Ziemba v. Cascade Intern., Inc.,* 256 F.3d 1194, 1202 (11th Cir. 2001) (quotation omitted). "Rule 9(b) does not allow a complaint to merely 'lump' multiple defendants together but require[s] plaintiffs to differentiate their allegations when suing more than one defendant…and inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Bruhl v. Pricewaterhousecoopers Intern.*, No. 03-23044-CIV-MARRA, 2007 WL 997362, *3 (S.D. Fla. Mar. 27, 2007) (quotation omitted).

A court need not take allegations as true if they are merely "threadbare recitals of a cause of action's elements, supported by mere conclusory statements".  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).

**B.**    **Counts VIII and XIV - Fraud**

Counts VIII and XIV are based or rely in one form or another on a theory that these Defendants made fraudulent misrepresentations of material fact to Plaintiff.  "Fraud claims are subject to the heightened pleading standard under *Federal Rule of Civil Procedure 9(b). Rule 9(b)* requires a party to "state with particularity the circumstances constituting fraud or mistake."

8

COHEN NORRIS WOLMER RAY TELEPMAN & COHEN
712 U.S. Highway One, Suite 400, North Palm Beach, FL 33408• Telephone 561-844-3600 • Facsimile 561-842-4104

*Kerruish v. Essex Holdings*, 2017 U.S. Dist. LEXIS 127183 (Fla. S.D. 2017).  See also *McGee v. JP Morgan Chase Bank, NA*, 520 Fed. App'x 829, 831 (11th Cir. 2013) (per curiam). Accordingly, a party must allege "(1) precisely what statements or omissions were made in which documents or oral representations; (2) the time and place of each such statement and the person responsible for making (or, in the case of omissions, not making) them; (3) the content of such statements and the manner in which they misled the plaintiff; and (4) what the defendant obtained as a consequence of the fraud. *McGee*, 520 Fed. App'x at 831.  Put differently, a party must plead the "who, what, when, where and how" of the allegedly fraudulent statements. *Mizzaro v. Home Depot, Inc*., 544 F.3d 1230, 1237 (11th Cir. 2008). *Kerruish* at *4.

The allegations of the Second Amended Complaint fail to comply with the requisite "*who, what, when, where and how*" standard.

The Second Amended Complaint lacks sufficient factual allegations to support the claims asserted against Obeid and Rafih when viewed against the plausibility standards enunciated by the United States Supreme Court, and the specificity requirements of *Rule 9(b)* regarding the fraud-based claims notwithstanding that the Amended Complaint spans 92 pages and contains 440 paragraphs.

The entirety of the fraud allegations against these Defendants are that both, while working to sell Rafih's dealership, said Barmapov's already chosen business partners were "*trustworthy*", that in the future, they would be *fair/good business partners*, that the deal was "*sound*", and that there was an expectation that there would be some sort of future profits.

"Not only in sales of real or personal property, but also in other business transactions, the law allows a party some latitude in making commendatory statements to induce another to deal with him and holds that the other cannot complain if he is imprudent enough to act upon them instead of investigating for himself and exercising his own judgment.  The doctrine is, that when

COHEN NORRIS WOLMER RAY TELEPMAN & COHEN
712 U.S. Highway One, Suite 400, North Palm Beach, FL 33408• Telephone 561-844-3600 • Facsimile 561-842-4104

persons are dealing at arm's length and on equal terms, mere commendatory expressions as to value, quality, prospects, and the like, though exaggerated, cannot be made the basis of a charge of fraud, if there is no representation or concealment of any material fact, and nothing is said or done to prevent the other party from making an examination or an investigation for himself.  The maxim, taken from the civil law, is simplex commendatio non obligat." 14 *Amm. & Eng. Ency. of Law* 118. *Tampa Union Terminal Co. v. Richards*, 146 So. 591 (Fla. 1933).

The Second Amended Complaint contains no allegations that these Defendants, other than stating their opinions, concealed any material fact or said or did anything to prevent Barmapov from examining or investigating the soundness of said opinions himself.  "Assuming arguendo that false representations had been made, a misrepresentation is not actionable where its truth might have been discovered by the exercise of ordinary diligence. See *Steinberg v. Bay Terrace Apartment Hotel, Inc.*, 375 So. 2d 1089 (Fla. 3d DCA 1979); *Welbourn v. Cohen*, 104 So. 2d 380 (Fla. 2d DCA 1958)."  *Wasser v. Sasoni*, 652 So. 2d 411, 412 (Fla. 3d DCA 1995).

As to the "*soundness*" or amorphous *future profitability* of the business, such statements are clearly ones of opinion and "puffing" by a seller. Likewise, as to any statements regarding Barmapov's associates' trustworthiness. The opinion in *MDVIP, Inc. v. Beber*, 222 So. 3d 555 (Fla. 4th 2017) is illustrative.  *Beber* involved representations which included "exceptional doctors, exceptional care, and exceptional results", the "finest national specialists," the "best hospitals and doctors," and the "fraternity of some of the nation's finest physicians" statements. The Court found that the status of being the "finest" or the "best" is a matter of opinion, and the allegations of fraud from the use of these terms cannot stand. Similarly, the referenced statements describing what makes an "exceptional doctor" are statements of opinion.

> "A claim of fraudulent misrepresentation is not actionable if premised on a mere opinion, rather than a material fact." *Thor Bear, Inc. v. Crocker Mizner Park, Inc.*, 648 So. 2d 168, 172 (Fla. 4th DCA 1994). It is the responsibility of the buyer of a product or service to investigate the truth of any "puffing" statements, as such declarations "do not constitute fraudulent misrepresentations." *Wasser v. Sasoni*, 652 So. 2d 411, 412 (Fla. 3d DCA 1995). A promise to deliver an "exceptional" product or service is a matter of

opinion rather than fact and constitutes non-actionable puffery. See *Heath v. Palmer*, 181 Vt. 545, 915 A.2d 1290, 1296 (Vt. 2006) (holding that a representation of "exceptional value" "unquestionably fall[s] within the category of opinion").

*Beber* at 561.

"To support a claim of fraud, the representation alleged to be fraudulent must be "an assertion of fact, not merely an expression of opinion." *Ed Miller & Sons, Inc. v. Earl*, 243 Neb. 708, 502 N.W.2d 444, 453 (Neb. 1993). *The Restatement (Second) of Torts § 538A* provides further guidance on when a statement is merely an opinion. That section states a "representation is one of opinion if it expresses only . . . [the speaker's] judgment as to quality, value, authenticity, or other matters of judgment." *Restatement (Second) of Torts § 538A* (1977). The maker of a statement of this nature will normally be understood as expressing only his own judgment. Id. at cmt. b." *BCD Farms, Inc. v. Certified Angus Beef, LLC*, 2008 U.S. Dist. LEXIS 10669 (Neb. 2008).

Moreover, there is absolutely no allegation that Plaintiff (an admittedly successful businessperson) was hampered from inspecting all relevant business or financial records or other pertinent information to determine the business's "soundness" (or for that matter, the background of the gentlemen he decided to go into business with). "In other words, the doctrine of caveat emptor, or "buyer beware," is still the common law rule applied to purchasers of commercial property." *Wasser v. Sasoni*, 652 So. 2d 411(Fla. 3rd DCA 1995). Plaintiff's reliance on statements representing the "soundness" of the business, and/or the trustworthiness of his chosen business associates, is not reasonable as a matter of law because of his ability to investigate the truth of said representations. *Wasser* ("Statements that the building was a very good building requiring "normal type of maintenance, and an excellent deal, were clearly statements of opinion.

A seller's puffing or statements of opinion do not relieve a buyer of the duty to investigate the truth of those statements and do not constitute fraudulent misrepresentations") (internal quotation marks omitted).  See *Lambert v. Sistrunk*, 58 So. 2d 434 (Fla. 1952); *Greenberg v. Berger*, 46 So. 2d 609 (Fla. 1950); *Glass v. Craig*, 83 Fla. 408, 91 So. 332 (1922); *Hart v. Marbury*, 82 Fla. 317, 90 So. 173 (1921);  *Keating v. DeArment*, 193 So. 2d 694 (Fla. 2d DCA), cert. denied, 201 So. 2d 549 (Fla. 1967).  In an arms-length transaction "*there is no duty imposed on either party to act for the benefit or protection of the other party, or to disclose facts that the other party could, by its own diligence have discovered.*" *Watkins v. NCNB Nat'l Bank, N.A.*, 622 So. 2d 1063, 1065-6 (Fla. 3ʳᵈ 1993), citing *Lanz v. Resolution Trust Corp.*, 764 F. Supp. 176, 179 (S.D. Fla. 1991); *Bankest Imports, Inc. v. Isca Corp.,* 717 F. Supp. 1537, 1541 (S.D. Fla. 1989); *Cripe v. Atlantic First Nat'l Bank*, 422 So. 2d 820 (Fla. 1982).

Plaintiff's case is dependent on Rafih's supposed knowledge as to some corners cut by the Amuials while they were formerly employed at his dealership.[8]  Although the details of this corner cutting are alleged, Rafih's knowledge as to those specifics thereof is not.  The pleadings simply allude to the fact that Rafih had to make payments due to the Amuials' actions.  Even that slight level of knowledge as to the Amuials' past behavior is not attributed to Obeid.  Especially since Obeid did not return to the dealership until after the Amuials left. ¶¶ 56, 59.  What level of detail and insight Obeid (or Rafih) had into the inner workings of the Amuials' souls are left to complete conjecture.

Plaintiff's ridiculous theory of liability appears to be that if a person is aware of a single

---

[8]  It is not alleged that Rafih or Obeid had any knowledge of any previous described bad acts by the Amuials. See ¶¶ 28-45.  This is not surprising since neither Rafih or Obeid had any reason to go digging into the Amuials' past.  That is in stark contrast to Barmapov who did have a duty to investigate the truth of any statements regarding the trustworthiness of his partners, instead of relying on the vague opinions of strangers.

12

COHEN NORRIS WOLMER RAY TELEPMAN & COHEN
712 U.S. Highway One, Suite 400, North Palm Beach, FL 33408• Telephone 561-844-3600 • Facsimile 561-842-4104

bad act in another's past, any positive comment made about that person thereafter is, by definition, a lie. Such a theory flies in the face of reality where people grow, evolve, learn from mistakes, are redeemed; or simply are in a different situation with different responsibilities, safeguards, and/or associates. Even worse, it disallows for the prospect that even though armed with identical facts, two people could espouse polar opposite opinions regarding something as nebulous as another's trustworthiness, without one of those opinions necessarily amounting to an intentional misrepresentation.

In fact, the Second Amended Complaint itself pleads facts explaining why Obeid would certainly believe Barmapov would be treated fairly. ¶¶ 82 – 88 go into great detail concerning the rosy picture being painted for Barmapov concerning how the business would run and how he was protected. It is also alleged that Obeid was at these meetings, hearing these same representations. There are no allegation that Obeid knew (any more than would Barmapov) that these representations were false. Plaintiff's entire theory is that because the Amuials, <u>as employees</u>, had at some time in the past engaged in certain shady acts, then Obeid and Rafih, with limited (or as pled no) real knowledge of these acts, should know as fact certain that, as business partners, in an entirely different business set up with specifically delineated safeguards and represented shared risks, would not be good or fair business partners.

To be *material*, a misrepresentation must "*substantially affect the value of the property*" being sold. *Johnson v. Davis*, 480 So. 2d 625 (Fla. 1985*); Billian v. Mobil Corp*., 710 So. 2d 984 (Fla. 4th DCA 1998) ("To be actionable, an undisclosed fact must materially affect the value of the property").

As alleged, the only transactions Rafih and Obeid were a party to (either as agent or principle) were the sale of the dealership's assets, and the potential sale of the real estate upon

which the dealership operated.  The misrepresentations attributable to these Defendants, such as vouching for trustworthiness of Plaintiff's business associates, are immaterial to these specific transactions.  There are no allegations that the trustworthiness of Plaintiff's business associates materially affected either the value or price of the Property, down payment, option fee, or assets of the business.

In this situation, Barmapov needed to exercise diligence and investigate his associates before going into business with them. The Second Amended Complaint includes a litany of bad acts committed by the Amuials relating to Crown Auto, Cornerstone, drug dealing, money laundering, guilty pleas, prison sentences, indictments, lawsuits, and embezzlement. ¶¶ 27-46. The allegations contain references to multiple federal and state court cases, as well as (being "*immortalized in*") a published book. Had Barmapov exercised the slightest level of due diligence (as he now has done to bring this suit) he would discover that he could not rely on expressions of opinion from two strangers as to the Amuials' trustworthiness.[9]

The Court should dismiss the fraud and misrepresentation claims as against these Defendants.

### C.      Counts VIII and XVII-Aiding and Abetting Claims

In Counts VIII and XVII aiding and abetting claims against these Defendants relating to the Co-Defendants' alleged breach of fiduciary (Count VIII) and fraud (Count XVII).  An aiding and abetting claim requires the plaintiff to establish (i) the existence of an underlying violation on the part of the primary wrongdoer; (ii) knowledge of the underlying violation by the alleged aider and abettor; and (iii) rendering substantial assistance in committing the wrongdoing by the

---

[9]  Not to mention that assurances and expressions of opinion he received from his family members and associates. ¶¶ 76-79.

COHEN NORRIS WOLMER RAY TELEPMAN & COHEN
712 U.S. Highway One, Suite 400, North Palm Beach, FL 33408• Telephone 561-844-3600 • Facsimile 561-842-4104

alleged aider and abettor. *Wiand v. Wells Fargo Bank, N.A.*, 938 F. Supp. 2d 1238, 1244 (M.D. Fla. 2013) (citations to Federal and Florida case law omitted); *Groom v. Bank of Am.*, 2012 U.S. Dist. LEXIS 2374 (Fla. M.D. 2012). "While actual knowledge may be shown by circumstantial evidence, courts stress that the requirement is *actual* knowledge and the circumstantial evidence must demonstrate that the aider-and-abettor *actually knew* of the underlying wrongs committed." *Id.* (quotation omitted; first emphasis in original, second added).   To satisfy the substantial assistance element, a plaintiff must allege (i) recklessness and a duty to disclose the breach; or (ii) conscious intent. *Li v. Walsh,* No. 16-81871-CIV-MARRA, 2017 WL 3130390, *5 (S.D. Fla. July 24, 2017).  No such allegations are present here.

There are either no allegations, or to the extent there are allegations they are insufficient, that these Defendants aided and abetted in wrongdoing of any other Defendant, that is, that Obeid or Rafih had *actual* knowledge of the alleged underlying wrongs committed or provided "substantial assistance" to any other Defendant in his or her or its commission of any alleged wrongdoing. These omissions are fatal to Barmapov's aiding and abetting claims.

In fact, almost of the alleged fraudulent behavior, and certainly all the alleged fiduciary behavior, occurred *after* these Defendants complained of behavior occurred. In regard to aiding and abetting fraud claim, these Defendants' complained of behavior, as alleged, consists entirely of failing to disclose the Amuials' past shady behavior, and saying they could be trusted[10]. ¶¶ 417-418.  There is no factual allegation that either of these Defendants knew that future bad acts would occur, or that their behavior in attempting to sell the dealership was going to provide substantial assistance to some future act.

---

[10] The allegations concerning any post-closing acts on Obeid's part are not incorporated in either Aiding and Abetting Count.

COHEN NORRIS WOLMER RAY TELEPMAN & COHEN
712 U.S. Highway One, Suite 400, North Palm Beach, FL 33408• Telephone 561-844-3600 • Facsimile 561-842-4104

The Court should dismiss Plaintiff's aiding and abetting claim as against these Defendants.

**D.**     **Count XIX-Civil Conspiracy Claim**

A civil conspiracy claim requires the plaintiff to establish (i) a conspiracy between two or more persons to do an unlawful act by unlawful means; (ii) the doing of some overt act in pursuance of the conspiracy; and (iii) damage to the plaintiff as a result of the acts done in furtherance of the conspiracy. *Eagletech Communcs., Inc. v. Bryn Mawr. Inv. Group. Inc.*, 79 So. 3d 855, 863 (Fla. 4th DCA 2012). "General allegations of conspiracy are inadequate." *World Class Yachts, Inc. v. Murphy,* 731 So. 2d 798, 799 (Fla. 4th DCA 1999).  Instead, a complaint must "set forth clear, positive, and specific allegations of civil conspiracy." *Id.* "The gist of a civil action for conspiracy is not the conspiracy itself, but the civil wrong which is done pursuant to the conspiracy and which results in damage to the plaintiff. Thus, a cause of action for civil conspiracy exists in the present case only if the basis for the conspiracy is an independent wrong or tort which would constitute a cause of action if the wrong were done by one person." *Blatt v. Green, Rose, Cohen & Piertrowski*, 456 So. 2d 949, 950-51 (Fla. 3d DCA 1984) (internal and external citations and quotations omitted).

As discussed above, there are no factual allegations that either of these Defendants made any misrepresentations nor committed any independent wrong or tort.

The Court should also dismiss Count XIX for failure to adequately plead what overt act any particular Defendant did in pursuance of any conspiracy.  In fact, Plaintiff failed to allege facts that show that each, or any, of these Defendants, knew that any other Defendant was actually doing anything wrong.  Plaintiff wants the Court to believe there was a fraudulent

scheme that all Defendants knowingly participated in.  However, for the third time, he has simply not shown that.

The Court should dismiss Plaintiff's civil conspiracy claim as against these Defendants.

## Joinder in Motions of Co-Defendants

To the extent same would be pertinent to them, Defendants hereby notify this Court of their joinder in toto, adoption, and reliance upon the argument, submissions, and case law, presented to this Court as contained in all motions filed by Co-Defendants in this action directed to the Second Amended Complaint.

## Request for Hearing per Local Rule 7.1(b)(2)

These Defendants request oral argument to facilitate a discussion of the foregoing claims, their elements and the Second Amended Complaint's allegations which he submits would be helpful to the Court in adjudicating this Motion. It is estimated that 60 minutes would suffice for argument.

## Conclusion

WHEREFORE, based on the foregoing, the Second Amended Complaint should be: (1) dismissed with prejudice as to these Defendants for failure to state a claim upon which relief can be granted; (2) pursuant to *Fed. R. Civ. P. 12(d),* summary judgment should be entered in favor of these Defendants: or (3) Plaintiff should be required to replead by making a more definite statement pursuant to *Fed. R. Civ. P. 12(e).*  Defendants further request an award of their reasonable attorney's fees and costs, and any other relief this Court deems appropriate, pursuant this Court's inherent power, as well as *Fed. R. Civ. P. 11,* when said claim ripens.

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was served electronically through the Court's CM/ECF System upon all parties registered to receive electronic notice in this case as indicated on the attached Electronic Mail Notice List on this 25th day of January 2019.

Gary A. Isaacs, Esquire, of Counsel
COHEN NORRIS WOLMER RAY
TELEPMAN COHEN
*Attorneys for John Obeid, Terry Rafih, Palm Beach*
*Auto Wholesale LLC,*
712 U.S. Highway One, Suite 400
North Palm Beach, Florida 33401
Telephone: (561) 844-3600
Email: gai@fcohenlaw.com

/s/ Gary A. Isaacs, Esquire
GARY A. ISAACS, ESQUIRE
Florida Bar No.: 602663

COHEN NORRIS WOLMER RAY TELEPMAN & COHEN
712 U.S. Highway One, Suite 400, North Palm Beach, FL 33408• Telephone 561-844-3600 • Facsimile 561-842-4104

**9:18-cv-80390-WPD Notice has been electronically mailed to:**

Alex Louis Braunstein      Alex.Braunstein@LeClairRyan.com

Andrew Teitelman      ateitelman@teitelaw.com

Andrew Lynch Cole      Andrew.Cole@leclairryan.com

Gary A. Woodfield      gwoodfield@haileshaw.com, bpetroni@haileshaw.com,
sborges@haileshaw.com

James Andrew Bertron , Jr      andy.bertron@nelsonmullins.com,
susan.orach@nelsonmullins.com

Keith David Silverstein      keith.silverstein@gmail.com, keith@silversteinpa.com,
vanessa@silversteinpa.com

Mitchell Wayne Berger      mberger@bergersingerman.com, drt@bergersingerman.com,
drt@ecf.inforuptcy.com

Paul A. Avron      pavron@bergersingerman.com, drt@bergersingerman.com,
drt@ecf.inforuptcy.com, efile@bergersingerman.com, mmorgan@bergersingerman.com

Sharon L. Kegerreis      skegerreis@bergersingerman.com, drt@bergersingerman.com,
DRT@ecf.inforuptcy.com

Thomas Hugh Dougherty      thdlaw@bellsouth.net

William Edward Stacey , Jr      wes@wespa.us, kjdpa@yahoo.com, wes946@aol.com

COHEN NORRIS WOLMER RAY TELEPMAN & COHEN
712 U.S. Highway One, Suite 400, North Palm Beach, FL 33408• Telephone 561-844-3600 • Facsimile 561-842-4104